IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CONSENT DECREE OF** |
| | ) | **PERMANENT INJUNCTION** |
| v. | ) | |
| | ) | Civil No. ___3:19-cv-752___ |
| BASIC RESET and | ) | |
| BIOGENYX, sole proprietorships, and | ) | |
| FRED R. KAUFMAN III and | ) | |
| KIMBERLY KAUFMAN, individuals, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## CONSENT DECREE OF PERMANENT INJUNCTION

Plaintiff, the United States of America, by its undersigned counsel, having filed a

Complaint for Permanent Injunction against Basic Reset and Biogenyx, sole proprietorships

(together, "Basic Reset/Biogenyx" or the "company") and Fred R. Kaufman III and Kimberly

Kaufman, individuals (collectively, "Defendants"), and Defendants having appeared and

consented to entry of this Decree without contest and before any testimony has been taken, and

the United States of America having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.  This Court has jurisdiction over the subject matter and all parties to this action.

2.  The Complaint states a cause of action against Defendants under the Federal Food, Drug,

and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (the "Act").

3.  Defendants violate 21 U.S.C. § 331(a) by introducing or delivering for introduction, or

causing to be introduced or delivered for introduction, into interstate commerce articles of food

(dietary supplements), as defined by 21 U.S.C. § 321(ff), that are:

A.     Adulterated within the meaning of 21 U.S.C. § 342(g)(1) in that they have been prepared, packed, or held in violation of the current good manufacturing practice regulations for dietary supplements set forth in 21 C.F.R. Part 111 ("Dietary Supplement CGMP"); and

B.     Misbranded within the meaning of 21 U.S.C. § 343(i)(2), (q)(1)(A), (q)(5)(F), (s)(2)(B), and/or (y), because their labels fail to:  list individual ingredients, correctly state the serving size, bear a Supplement Facts panel, properly declare dietary ingredients; declare the percent daily value of ascorbic acid; include a statement of identity as a dietary supplement, and/or include a domestic address or domestic phone number.

4.     Defendants violate 21 U.S.C. § 331(k) by causing articles of food (dietary supplements) to become adulterated within the meaning of 21 U.S.C. § 342(g)(1) and misbranded within the meaning of 21 U.S.C. § 343(i)(2), (q)(1)(A), (q)(5)(F), (s)(2)(B), and/or (y), while such articles are held for sale after shipment of one or more of their components in interstate commerce.

5.     Defendants violate 21 U.S.C. § 331(d) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce new drugs, as defined by 21 U.S.C. § 321(p), that are neither approved pursuant to 21 U.S.C. § 355(a) nor exempt from approval pursuant to 21 U.S.C. § 355(i).

6.     Defendants violate 21 U.S.C. § 331(a) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce a device, as defined by 21 U.S.C. § 321(h), that is:

A.     Adulterated within the meaning of 21 U.S.C. § 351(f)(1)(B), in that it is a Class III device under 21 U.S.C. § 360c(f), and it does not have an approved application for premarket approval on file with the United States Food and Drug Administration ("FDA") as required by

21 U.S.C. § 360e(a) or an effective investigational device exemption under 21 U.S.C. § 360j(g); and

      B.    Misbranded within the meaning of 21 U.S.C. § 352(o), in that Defendants have failed to provide premarket notification of the device to FDA as required by 21 U.S.C. § 360(k).

7.    Upon entry of this Decree, Defendants and each and all of their directors, officers, agents, representatives, employees, attorneys, successors and assigns, and any and all persons in active concert or participation with any of them, who have received actual notice of this Decree by personal service or otherwise (collectively, "Associated Persons"), are permanently restrained and enjoined under 21 U.S.C. § 332(a), and the inherent equitable authority of this Court, from directly or indirectly receiving, labeling, holding, or distributing any articles of food (including dietary supplements), drugs, or devices at or from 260 W. Main Street, Suites 103 and 106D, Hendersonville, Tennessee 37075, or at or from any other location(s) at which Defendants now or in the future directly or indirectly receive, label, hold, or distribute articles of food (including dietary supplements), drugs, or devices (hereafter, "Defendants' Facility" or "the Facility"), unless and until:

      A.    For all of Defendants' food (including dietary supplements):

          i.    Defendants retain, at Defendants' expense, an independent person (the "CGMP Expert") who is without any personal or financial ties (other than a retention agreement) to Defendants and/or their families, and who, by reason of background, training, education, or experience, is qualified to inspect the Facility to determine whether the methods, processes, and controls are operated and administered in conformity with Dietary Supplement CGMP. Defendants shall notify FDA in writing of the identity and qualifications of the CGMP Expert within three (3) business days of retaining such CGMP Expert;

ii.     The CGMP Expert performs a comprehensive inspection of the Facility and the methods, processes, and controls used to receive, label, hold, and distribute dietary supplements and certifies in writing to FDA that: (a) he or she has inspected the Facility, methods, processes, and controls; (b) all Dietary Supplement CGMP deviations that have been brought to Defendants' attention by FDA, the CGMP Expert, and any other source have been corrected; and (c) the Facility and the methods, processes, and controls used to receive, label, hold, and distribute dietary supplements, are, in the CGMP Expert's opinion, in compliance with this Decree, the Act, and its implementing regulations. The CGMP Expert's report of the inspection, which shall be submitted to FDA, shall include, but not be limited to, a determination that Defendants have created and implemented methods, processes, and controls to ensure that they:

a.     Establish specifications to assure that the products they receive for labeling as dietary supplements are adequately identified and consistent with the purchase order, *see* 21 C.F.R. § 111.70(f);

b.     Establish specifications for the labeling of their dietary supplements, including specifications to ensure accuracy during the labeling process, *see* 21 C.F.R. § 111.70(g);

c.     Establish specifications for their labels, *see* 21 C.F.R. § 111.70(d);

d.     Establish and follow written procedures that specify responsibilities for quality control, *see* 21 C.F.R. § 111.103;

e.     Identify each unique lot within each shipment of received product in a manner that allows Defendants to trace the lot to the supplier, the date received, the name of

4

the received product, the status of the received product (*e.g.*, quarantine, approved, or rejected), and to the product that Defendants labeled and distributed as dietary supplements, s*ee* 21 C.F.R. § 111.165(d)(1);

f. Establish and follow written procedures to review and investigate product complaints, *see* 21 C.F.R. § 111.570(b);

g. Make and keep records of any material review and disposition decision on a returned dietary supplement, *see* 21 C.F.R. § 111.535(b)(2); and

h. Prepare batch production records that include documentation of the labeling operations at the time Defendants label their products, *see* 21 C.F.R. § 111.260(k);

iii. Defendants retain, at Defendants' expense, an independent person (the "Labeling Expert") who is without any personal or financial ties (other than a retention agreement) to Defendants and/or their families, and who, by reason of background, training, education, or experience, is qualified to review product labels; labeling; promotional materials; websites owned, controlled by, or related to Defendants including, but not limited to, www.aqualyte.info, www.basicreset.biz, www.basicreset.com, www.basicreset.info, www.basicreset.net, www.basicreset.org, www.beegold.info, www.betafactor.info, www.biogenyx.info, www.cbd-reset.info, www.dino-min.info, www.dorothykaufman.com, www.earthwash.info, www.gh-c.info, www.ionyte.info, www.ionyte.org, www.mello-tonin.info, www.nuovi.info, www.ph-fx.info, www.slimupnow.info, and www.trimup.info, Defendants' YouTube and social media websites, all Basic Reset/Biogenyx affiliate websites, and any future website(s) created, controlled by, or related to Defendants (collectively, "Defendants' websites"); and any other media over which Defendants have control to determine whether the labeling complies with 21 U.S.C. § 343 and applicable regulations. Defendants shall notify FDA

5

in writing of the identity and qualifications of the Labeling Expert within three (3) business days of retaining such Labeling Expert;

      iv.    The Labeling Expert conducts a comprehensive review of Defendants' product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control and certifies in writing to FDA that: (1) he or she has reviewed Defendants' product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control; (2) all labeling violations brought to Defendants' attention by FDA, the Labeling Expert, and any other source have been corrected; and (3) Defendants' products and claims are, in the Labeling Expert's opinion, in compliance with this Decree, the Act, and its implementing regulations. The Labeling Expert shall prepare a detailed report of this review, which shall be submitted to FDA, that shall include, but not be limited to, a determination that Defendants have implemented procedures that are adequate to ensure that their product labeling complies with 21 U.S.C. § 343 and applicable regulations;

    B.    For all of Defendants' drugs, either:

      i.    an approved new drug application, an abbreviated new drug application, or an investigational new drug application filed pursuant to 21 U.S.C. § 355(b), (j), or (i) is in effect for such drugs; or

      ii.    the following requirements are met:

      a.    Defendants remove from product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control (i) all representations that the products diagnose, cure, mitigate, treat, or prevent disease, and all representations that otherwise cause any of their products to be a drug within the meaning of the Act, and (ii) all references, direct or indirect, to other sources that contain representations that

6

Defendants' products diagnose, cure, mitigate, treat, or prevent disease, and representations that otherwise cause any of Defendants' products to be a drug within the meaning of the Act;

b.      Defendants retain, at Defendants' expense, an independent person (the "Drug Expert") who is without any personal or financial ties (other than a retention agreement) to Defendants and/or their families, and who, by reason of background, training, education, or experience, is qualified to review the representations Defendants make for each of their products on product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control to determine whether Defendants' claims cause any product that they receive, label, hold, or distribute to be a drug within the meaning of 21 U.S.C. § 321(g)(1).  Defendants shall notify FDA in writing of the identity and qualifications of the Drug Expert within three (3) business days of retaining such Drug Expert;

c.      The Drug Expert conducts a comprehensive review of Defendants' product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control and certifies in writing to FDA that:  (i) he or she has inspected Defendants' Facility; (ii) he or she has identified all of Defendants' products and reviewed Defendants' representations for each product on product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control; (iii) Defendants have removed all representations that cause any of Defendants' products to be drugs within the meaning of the Act, 21 U.S.C. § 321(g); and (iv) based upon the Drug Expert's inspection and review, Defendants are operating in conformity with this Decree, the Act, and its implementing regulations.  The Drug Expert's written certification shall include the specific results of his or her inspection and review, including references to product names and copies of all materials reviewed.  For all products for which Defendants have removed claims that caused

7

such products to be drugs within the meaning of the Act, and such products meet the definition of a dietary supplement, Defendants shall comply with the requirements in Paragraph 7.A of this Decree, the dietary supplement provisions of the Act, and its implementing regulations, before introducing such products into interstate commerce as dietary supplements;

C.      For all of Defendants' devices, either:

i.      the devices are:  (a) the subject of an approved application for premarket approval under 21 U.S.C. § 360e(a); (b) the subject of an investigational device exemption under 21 U.S.C. § 360j(g); (c) the subject of a cleared premarket notification under 21 U.S.C. § 360(k); or (d) the subject of a grant of *de novo* classification from FDA under 21 U.S.C. § 360c(f)(2); or

ii.      the following requirements are met:

a.      Defendants remove from product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control (i) all representations that the products diagnose, cure, mitigate, treat, or prevent disease, and all representations that otherwise cause any of their products to be a device within the meaning of the Act, and (ii) all references, direct or indirect, to other sources that contain representations that Defendants' products diagnose, cure, mitigate, treat, or prevent disease, and representations that otherwise cause any of Defendants' products to be a device within the meaning of the Act;

b.      Defendants retain, at Defendants' expense, an independent person (the "Device Expert") who is without any personal or financial ties (other than a retention agreement) to Defendants and/or their families, and who, by reason of background, training, education, or experience, is qualified to review the representations Defendants make for each of their products on product labels; labeling; promotional materials; Defendants' websites; and any

8

other media over which Defendants have control to determine whether Defendants' claims cause any product that they receive, label, hold, or distribute to be a device within the meaning of 21 U.S.C. § 321(h). Defendants shall notify FDA in writing of the identity and qualifications of the Device Expert within three (3) business days of retaining such Device Expert;

        c.    The Device Expert conducts an inspection of Defendants' Facility and a comprehensive review of Defendants' product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control and certifies in writing to FDA that: (i) he or she has inspected Defendants' Facility; (ii) he or she has identified all of Defendants' products and reviewed Defendants' representations for each product on product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control; (iii) Defendants have removed all representations that cause any of Defendants' products to be devices within the meaning of the Act, 21 U.S.C. § 321(h); and (iv) based upon the Device Expert's inspection and review, Defendants are operating in conformity with this Decree, the Act, and its implementing regulations. The Device Expert's written certification shall include the specific results of his or her inspection and review, including references to product names and copies of all materials reviewed;

        D.    Should any of the Experts described in Paragraphs 7.A–C (who can be the same person(s)) identify any deficiencies in their certifications as described in Paragraphs 7.A–C:

        i.    Defendants shall report in writing to FDA and the appropriate Expert the actions they have taken to correct all such deficiencies; and

        ii.    For deficiencies related to Defendants' food (including dietary supplements):

a.    The CGMP Expert shall certify in writing to FDA, based on his or her further review and/or inspection(s), that Defendants' Facility, methods, processes, and controls used to receive, label, hold, and distribute dietary supplements are and will be continuously operated in conformity with Dietary Supplement CGMP and this Decree; and

b.    The Labeling Expert shall certify in writing to FDA, based on his or her further review and/or inspection(s) that Defendants have updated their labels and/or labeling to ensure that Defendants' food is in compliance with this Decree, the Act, and its implementing regulations;

iii.    For deficiencies relating to drugs, the Drug Expert shall certify in writing to FDA, based on his or her further review and/or inspection(s), that Defendants have either: (a) removed all representations that cause any of Defendants' products to be drugs within the meaning of the Act, 21 U.S.C. § 321(g), from product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control; or (b) ensured that each of Defendants' drugs is the subject of an approved new drug application or an abbreviated new drug application, or an investigational new drug application filed pursuant to 21 U.S.C. § 355(b), (j), or (i) is in effect for such drugs;

iv.    For deficiencies relating to devices, the Device Expert shall certify in writing to FDA, based on his or her further review and/or inspection(s), that Defendants have either: (a) removed all representations that cause any of Defendants' products to be devices within the meaning of the Act, 21 U.S.C. § 321(h), from product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control; or (b) ensured that each of Defendants' devices are the subject of an approved application for premarket approval pursuant to 21 U.S.C. § 360e(a), the subject of an effective investigational

10

device exemption pursuant to 21 U.S.C. § 360j(g), the subject of a cleared premarket notification pursuant to 21 U.S.C. § 360(k), or the subject of a grant of *de novo* classification from FDA pursuant to 21 U.S.C. § 360c(f)(2);

      E.    Defendants recall and destroy, under FDA's supervision and in accordance with the procedures provided in Paragraph 8, all of Defendants' food (including dietary supplements), drugs, and devices that were received, labeled, held, and/or distributed between November 7, 2017, and the date of entry of this Decree;

      F.    As and when FDA deems necessary, FDA representatives inspect Defendants' Facility to determine whether the requirements of this Decree have been met and whether Defendants are operating in conformity with this Decree, the Act, and its implementing regulations. Provided that FDA finds that Defendants' submissions under Paragraphs 7.A–E of this Decree appear to be satisfactory and notified Defendants of such finding in writing, FDA will initiate the inspection as soon as practicable;

      G.    Defendants have paid all costs of FDA's inspections, investigations, supervision, analyses, examinations, and reviews with respect to Paragraph 7, at the rates set forth in Paragraph 15; and

      H.    FDA notifies Defendants in writing that they appear to be in compliance with the requirements set forth in Paragraphs 7.A–G of this Decree. FDA will notify Defendants as soon as practicable. In no circumstance shall FDA's silence be construed as a substitute for written notification.

    8.    Within twenty (20) calendar days after entry of this Decree, Defendants shall recall and destroy, under FDA supervision and to FDA's satisfaction, all of Defendants' food (including dietary supplements), drugs, and devices that Defendants received, labeled, held, and/or

distributed between November 7, 2017, and the date of entry of this Decree. Defendants shall, under FDA supervision and to FDA's satisfaction, notify all affected consumers of the recall. Prior to destruction, Defendants must submit a written destruction plan to FDA and FDA must approve Defendants' destruction plan in writing before any destruction can take place. Under no circumstances shall FDA's silence be construed as a substitute for written notification. Defendants shall notify FDA in writing within ten (10) calendar days of receiving any additional recalled products. Defendants shall hold the recalled products until FDA is available to supervise destruction. Defendants shall not dispose of any article of food, drug, or device in a manner contrary to the provisions of the Act, any other federal law, or the laws of any state or territory in which the drugs are disposed. Defendants shall bear the cost of the recall, destruction notification, and FDA supervision. The cost of FDA's participation and supervision under this Paragraph shall be borne by Defendants at the rates specified in Paragraph 15.

9.     After Defendants have complied with Paragraphs 7.A–G and received FDA's written notification pursuant to Paragraph 7.H, Defendants shall retain an independent person or persons who shall meet the criteria described in Paragraphs 7.A–C (the "Auditor") to conduct audit inspections of Defendants' Facility no less frequently than once every six (6) months for a period of no less than five (5) years. The first audit shall occur not more than six (6) months after Defendants have received FDA's written notification pursuant to Paragraph 7.H. The Auditor may be the same person or persons retained as an Expert described in Paragraphs 7.A–C.

A.     At the conclusion of each audit inspection, the Auditor shall prepare a detailed written audit report ("Audit Report") analyzing whether or not Defendants are operating in compliance with this Decree, the Act, and its implementing regulations and identifying in detail any deviations from the foregoing ("Audit Report Observations").

12

B.     Each Audit Report shall contain a written certification that the Auditor: (1) has personally inspected Defendants' Facility and operations and reviewed all product labels; labeling; promotional materials; Defendants' websites; and any other media over which Defendants have control containing representations about the intended use(s) of Defendants' products; and (2) personally certifies whether or not Defendants' food, drugs, and/or devices are in compliance with the requirements of this Decree, the Act, and its implementing regulations.

C.     As a part of every Audit Report, except the first, the Auditor shall assess the adequacy of corrective actions taken by Defendants to correct all previous Audit Report observations. The Audit Reports shall be delivered contemporaneously to Defendants and FDA, at the address provided in Paragraph 24, by courier service or overnight delivery service, no later than fifteen (15) business days after the date the Audit inspection is completed. In addition, Defendants shall maintain their Audit Reports and all of their underlying data in separate files at Defendants' Facility and shall promptly make the Audit Reports available to FDA upon request.

D.     If an Audit Report contains any observations indicating that Defendants' food, drugs, or devices are not in compliance with this Decree, the Act, or its implementing regulations, Defendants shall, within fifteen (15) calendar days of receipt of the Audit Report, correct those observations, unless FDA notifies Defendants that a shorter time period is necessary. If, after receiving the Audit Report, Defendants believe that correction of the deviations may take longer than fifteen (15) calendar days, Defendants shall, within ten (10) calendar days of receipt of the Audit Report, submit to FDA in writing a proposed schedule for completing corrections ("Audit Correction Schedule"). The Audit Correction Schedule must be reviewed and approved by FDA in writing prior to implementation by Defendants. In no

13

circumstance shall FDA's silence be construed as a substitute for written approval. Defendants shall complete all corrections according to the approved Audit Correction Schedule.

E. Immediately upon correction, Defendants shall submit documentation of their corrections to the Auditor. Within thirty (30) calendar days after the Auditor's receipt of Defendants' documentation of corrections, unless FDA notifies Defendants that a shorter time period is necessary, or within the time period provided in an Audit Correction Schedule approved by FDA, the Auditor shall review the actions taken by Defendants to correct the Audit Report Observations. Within five (5) business days after beginning that review, the Auditor shall report in writing to FDA whether each of the Audit Report Observations has been corrected and, if not, which Audit Report Observations remain uncorrected.

10. Upon entry of this Decree and after Defendants receive notification under Paragraph 7.H from FDA that they are permitted to resume operations, Defendants and all Associated Persons are permanently restrained and enjoined under 21 U.S.C. § 332(a) from directly or indirectly doing or causing to be done any of the following acts:

A. Violating 21 U.S.C. § 331(a), by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce: (1) articles of food (including dietary supplements) that are adulterated within the meaning of 21 U.S.C. § 342(g)(1) or misbranded within the meaning of 21 U.S.C. § 343; and (2) devices that are adulterated within the meaning of 21 U.S.C. § 351(f)(1)(B) and misbranded within the meaning of 21 U.S.C. § 352(o);

B. Violating 21 U.S.C. § 331(k), by causing articles of: (1) food (including dietary supplements) to become adulterated within the meaning of 21 U.S.C. § 342(g)(1) or misbranded

14

within the meaning of 21 U.S.C. § 343, while such articles are held for sale after shipment of one or more of their components in interstate commerce;

C.     Violating 21 U.S.C. § 331(d), by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce new drugs, as defined by 21 U.S.C. § 321(p), that are neither approved pursuant to 21 U.S.C. § 355(a) nor exempt from approval pursuant to 21 U.S.C. § 355(i); and

D.     Failing to implement and continuously maintain the requirements of this Decree, the Act, or its implementing regulations.

11.     If, at any time after this Decree has been entered, FDA determines, based on a review of inspection results; product labels; labeling; promotional materials; Defendants' websites; any other media over which Defendants have control that contains representations about the intended use(s) of Defendants' products; a report prepared by Defendants' Experts or the Auditor; or any other information, that Defendants have failed to comply with any provision of this Decree, have violated the Act or its implementing regulations, or that additional corrective actions are necessary to achieve compliance with this Decree, the Act, or its implementing regulations, FDA may, as and when it deems necessary, notify Defendants in writing of the noncompliance and order Defendants to take appropriate corrective actions, including, but not limited to, ordering Defendants to immediately take one or more of the following actions:

A.     Cease labeling, holding, or distributing any products;

B.     Revise, modify, expand, or continue to submit any reports or plans prepared pursuant to this Decree;

C.     Submit additional reports or information to FDA as requested;

D.     Recall any product at Defendants' expense; or

15

E.    Take any other corrective action(s) as FDA, in its discretion, deems necessary to bring Defendants and their products into compliance with this Decree, the Act, or its implementing regulations.  This remedy shall be separate and apart from, and in addition to, any other remedy available to the United States under this Decree or under the law.

12.    Upon receipt of any order issued by FDA pursuant to Paragraph 11, Defendants shall immediately and fully comply with the terms of the order.  Any cessation of operations or other action described in Paragraph 11 shall continue until Defendants receive written notification from FDA that Defendants appear to be in compliance with this Decree, the Act, and its implementing regulations, and that Defendants may resume operations.  Defendants shall pay all costs of recalls and other corrective actions, including the costs of FDA's inspections, investigations, supervision, analyses, examinations, sampling, testing, reviews, document preparation, travel, and subsistence expenses to implement and monitor the remedies set forth in Paragraph 11, at the rates specified in Paragraph 15.

13.    Within ten (10) calendar days after FDA's request for Defendants' labels, labeling, promotional materials, Defendants' websites, and any other media over which Defendants have control containing representations about the intended use(s) of Defendants' products, Defendants shall submit a copy of the requested materials (in hard copy or, if appropriate, on CD-ROM) to FDA at the address specified in Paragraph 24.

14.    FDA representatives shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of Defendants' facilities and, without prior notice, take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree.  During such inspections, FDA representatives shall be permitted immediate access to buildings, equipment, in-process and finished materials, containers, Defendants' product labels,

16

labeling, promotional materials, Defendants' websites, and any other media over which Defendants have control containing representations about the intended use(s) of Defendants' products, and other materials therein; to take photographs and make video recordings; to take samples of Defendants' finished and unfinished materials and products, containers, Defendants' product labels, labeling, promotional materials, Defendants' websites, and any other media over which Defendants have control containing representations about the intended use(s) of Defendants' products; and to examine and copy all product labels, labeling, promotional materials, Defendants' websites, any other media over which Defendants have control, and all records relating to the receipt, labeling, holding, or distribution of any and all of Defendants' products. The inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials. The inspection authority granted by this Decree is separate from, and in addition to, the authority to conduct inspections under the Act, 21 U.S.C. § 374.

15. Defendants shall pay all costs of FDA's inspections, investigations, supervision, analyses, examinations, and reviews that FDA deems necessary to evaluate Defendants' compliance with any part of this Decree, including the travel incurred by specialized investigatory and expert personnel, at the standard rates prevailing at the time the costs are incurred. As of the date that this Decree is signed by the parties, these rates are: $97.57 per hour or fraction thereof per representative for inspection and investigative work; $132.89 per hour or fraction thereof per representative for analytical or review work; $0.58 per mile for travel expenses by automobile; government rate or the equivalent for travel by air or other means; and the published government per diem rate for subsistence expenses where necessary. In the event that the standard rates applicable to FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court. Defendants shall

17

make payment in full to FDA within twenty (20) business days of receiving written notification from FDA of the costs.

16. Within five (5) business days after entry of this Decree, Defendants shall post a copy of this Decree in a conspicuous location in a common area at Defendants' Facility and ensure the Decree remains posted for as long as the Decree remains in effect. Within ten (10) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this Paragraph.

17. Within ten (10) business days after entry of this Decree, Defendants shall hold a general meeting or series of smaller meetings for all employees, at which they shall describe the terms and obligations of this Decree. Within fifteen (15) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this Paragraph and a copy of the agenda, list of attendees, and meeting minutes from the meeting(s) held pursuant to this Paragraph.

18. Within ten (10) business days after entry of this Decree, Defendants shall provide a copy of the Decree by personal service or certified mail (return receipt requested) to each and all Associated Persons. Within twenty (20) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this Paragraph, identifying the names, addresses, and positions of all Associated Persons who have received a copy of this Decree, and attaching a copy of the executed certified mail return receipts.

18

19. In the event that any of the Defendants becomes associated with any additional Associated Person(s) at any time after entry of this Decree, Defendants shall immediately provide a copy of this Decree, by personal service or certified mail (return receipt requested) to such Associated Person(s). Within five (5) business days of each time that any of the Defendants becomes associated with any additional Associated Person, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this Paragraph, identifying the names, addresses, and positions of all Associated Persons who received a copy of this Decree pursuant to this Paragraph, and attaching a copy of the executed certified mail return receipts.

20. Defendants shall notify FDA in writing at least ten (10) business days before any change in ownership, name, or character of their business that occurs after entry of this Decree, including an incorporation, reorganization, creation of a subsidiary, relocation, dissolution, bankruptcy, assignment, sale, or any other change in the structure or identity of Basic Reset/Biogenyx, or the sale or assignment of any business assets, such as buildings, equipment, or inventory, that may affect obligations arising out of this Decree. Defendants shall provide a copy of this Decree to any prospective successor or assign at least twenty (20) business days prior to any sale or assignment. Defendants shall furnish FDA with an affidavit of compliance with this Paragraph no later than ten (10) business days prior to such assignment or change in ownership.

21. If any Defendant fails to comply with any provision of this Decree, the Act, or its implementing regulations, including any time frame imposed by this Decree, then Defendants shall pay to the United States of America: (a) five thousand dollars ($5,000) in liquidated damages for each violation of the Act, its implementing regulations, or this Decree; (b) an

19

additional three thousand dollars ($3,000) in liquidated damages per day, per violation, for each violation of the Decree, the Act, and its implementing regulations; and (c) an additional sum in liquidated damages equal to twice the retail value of any product distributed in violation of the Decree, the Act, and its implementing regulations.  Defendants understand and agree that the liquidated damages specified in this Paragraph are not punitive in nature, and the remedy in this Paragraph shall be in addition to any other remedies available to the United States under this Decree or the law.

22.    Should the United States bring and prevail in a contempt action to enforce the terms of this Decree, Defendants shall, in addition to other remedies, reimburse the United States for its attorneys' fees (including overhead), expert witness fees, travel expenses incurred by attorneys and witnesses, investigational and analytical expenses, administrative and court costs, and any other costs or fees relating to such contempt proceedings.

23.    Defendants shall abide by the decisions of FDA, and FDA's decisions shall be final. All decisions conferred upon FDA in this Decree shall be vested in FDA's discretion and, to the extent that these decisions are subject to review, shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A).  Review by the Court of any FDA decision rendered pursuant to this Decree shall be based exclusively on the written record before FDA at the time the decision was made.  No discovery shall be taken by either party.

24.    All notifications, correspondence, and communications to FDA required by the terms of this Decree shall be prominently marked "Consent Decree Correspondence" and addressed to Division Director, Office of Human and Animal Food Operations East 5 (HAFE 5), Cincinnati District Office, U.S. Food and Drug Administration, 6751 Steger Drive, Cincinnati, Ohio 45237, and shall reference this civil action by case name and civil action number.

20

25. This Court retains jurisdiction over this action and the parties thereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.

SO ORDERED, this 3rd day of September, 2019.

_____
UNITED STATES DISTRICT JUDGE

Entry consented to:

For Defendants

_____
FRED R. KAUFMAN III
Individually and on behalf of Basic Reset and Biogenyx

_____
KIMBERLY KAUFMAN
Individually

For Plaintiff

DONALD Q. COCHRAN
United States Attorney

CHRISTOPHER SABIS
Assistant United States Attorney

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

GUSTAV W. EYLER
Director

ANDREW CLARK
Assistant Director

By: _____
CHARLES J. BIRO
Trial Attorney
Consumer Protection Branch
Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044-0386

21

(202) 307-0089
Charles.Biro@usdoj.gov

OF COUNSEL:

ROBERT P. CHARROW
General Counsel

STACY AMIN
Chief Counsel
Food and Drug Administration
Deputy General Counsel
Department of Health and Human Services

ANNAMARIE KEMPIC
Deputy Chief Counsel for Litigation

LAURA AKOWUAH
Associate Chief Counsel
Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Bldg. 32, Room 4381
Silver Spring, MD 20993-0002
Phone: 301-796-7912
Email: laura.akowuah@fda.hhs.gov